UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONNA L. DIODATI

                          **Plaintiff**

                          **v.**                                        6:04-CV-446
                                                                      (FJS/DEP)

**CITY OF LITTLE FALLS,**
**CITY OF LITTLE FALLS POLICE**
**DEPARTMENT, JOSEPH SERVIDONE,**
**MICHAEL MASI, and KAYLA LANPHERE,**

                          **Defendants.**
_____

**APPEARANCES**                                    **OF COUNSEL**

**FELT EVANS, LLP**                      **JAY G. WILLIAMS III, ESQ.**
4-6 North Park Row
Clinton, New York 13323
Attorneys for Plaintiff

**MURPHY, BURNS, BARBER &**         **THOMAS K. MURPHY, ESQ.**
**MURPHY, LLP**
Executive Woods
4 Atrium Drive
Albany, New York 12205
Attorneys for Defendants

**SCULLIN**, **Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       On April 20, 2004, Plaintiff filed her complaint alleging the following causes of action arising from an incident involving members of the City of Little Falls Police Department: (1) false arrest/false imprisonment pursuant to 42 U.S.C. § 1983 and New York State law; (2) state-law battery; (3) state-law libel and/or slander; and (4) violation of civil rights under the Fifth and

Fourteenth Amendments.

Currently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II. BACKGROUND[1]

On September 3, 2003, Little Falls Police Officer Karla Lanphere conducted a traffic stop involving Plaintiff's grandson, Aaron Papaleo. During the stop, Plaintiff arrived and approached Officer Lanphere's vehicle and talked with her. At that time, Officer Lanphere informed Plaintiff that her grandson was being charged with speeding, and Plaintiff asked to see the radar. Plaintiff then left the scene of the traffic stop, taking Mr. Papaleo's three passengers to school. Mr. Papaleo was subsequently arrested and taken to the police station.

Shortly after Officer Lanphere arrived at the police station with Mr. Papaleo, Plaintiff also arrived. Little Falls Police Department Sergeant Michael Masi met Plaintiff at the door and invited her in. At some point thereafter, Plaintiff attempted to leave, but Little Falls Sergeant Joseph Servidone handcuffed her on Sgt. Masi's orders, and she was placed under arrest.[2]

---

[1] For purposes of this section, the Court adopts Plaintiff's version of the facts.

[2] Not surprisingly, Defendants' version of the facts differs markedly from Plaintiff's. Defendants allege that Officer Lanphere stopped Mr. Papaleo for speeding through a fifteen mile-per-hour school zone at forty-five miles-per-hour. When Officer Lanphere stopped the vehicle, its occupants allegedly ran. After the occupants returned, Mr. Papaleo allegedly gave Officer Lanphere a false name before exiting the vehicle to yell at someone over his cellular phone.

Later on, while Officer Lanphere wrote the ticket inside her squad car, Plaintiff allegedly arrived and pounded on the window. Defendants assert that Plaintiff yelled and did not comply with a request to return to her own vehicle. Apparently unsatisfied, Plaintiff allegedly continued yelling and stated, "I want to see the radar; I have a right to see the radar." *See* Affidavit of
(continued...)

Plaintiff was charged with violating New York State Penal Law § 195.05, obstruction of governmental administration in the second degree.[3]  A report of Plaintiff's arrest appeared in a local newspaper.  The charge was eventually adjourned in contemplation of dismissal for a period of six months, during which time Plaintiff was required to maintain lawful behavior.

### III. DISCUSSION

**A.    Municipal Liability**

Defendants claim that Plaintiff cannot hold the City of Little Falls or the City of Little Falls Police Department liable for their employees' actions under a theory of municipal liability

---

[2](...continued)
Thomas K. Murphy, sworn to August 15, 2005, at Exhibit "A" at 48.  After Plaintiff continued this course of conduct, and with Mr. Papaleo still yelling on his cellular phone, Officer Lanphere called for backup.  Plaintiff then allegedly informed Officer Lanphere that "your department has issues; none of you are any good." *See id.* at 52.  Plaintiff allegedly uttered profanities before leaving the scene.

According to Defendants, the situation did not improve upon Plaintiff's departure.  Instead, Mr. Papaleo's father allegedly arrived at the same time as Little Falls Police Officer Petrie.  Yelling, cursing, and flailing of arms allegedly ensued on the father's part.  The father left, but the son allegedly continued this pattern of behavior before Officer Petrie arrested him.

Back at the station, Sgt. Masi had been apprised of the evolving situation.  He was familiar with the Papaleo family from a previous traffic stop of Mr. Papaleo at which Plaintiff had allegedly arrived and intervened.  At that time, Sgt. Masi contends he warned Plaintiff not to interfere in traffic stops and indicated that her arrest would occur if she repeated the behavior.  With this knowledge, Sgt. Masi allegedly arrested Plaintiff immediately upon her arrival at the station but did not employ handcuffs until Plaintiff resumed yelling, accused the police of being corrupt, and attempted to leave.  Then, Sgt. Servidone handcuffed one of Plaintiff's wrists to a "bull ring" at Sgt. Masi's order.

[3] Plaintiff asserts that she complied with all police requests and was merely a victim of a vendetta by Sgt. Masi arising from her previous challenge of a questionable search.

-3-

because Plaintiff has not alleged a policy, custom, or practice on the part of these Defendants.[4] Moreover, Defendants contend that Plaintiff has not alleged that the person who decided to arrest her had final policy-making authority.

A municipality is considered a "person" for purposes of 42 U.S.C. § 1983.[5] *Monell*, 436 U.S. at 690 (footnote omitted). However, a municipality cannot be held liable based solely on its employment of a tortfeasor; in other words, there can be no liability under § 1983 on a respondeat superior basis. *See id.* at 691. Rather, municipal liability must be based on "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy . . . ." *Id.* at 694. Such policy or custom must be a "moving force of the constitutional violation . . . ." *Id.*

Municipal liability only attaches when a municipal policymaker consciously or

---

[4] To the extent that the City of Little Falls Police Department is a distinct suable entity at all, it would receive the benefit of *Monell*'s rule for local government units. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (footnote omitted); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) ("A municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees." (citation omitted)).

[5] Section 1983 provides, in pertinent part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

deliberately chooses between various alternatives.[6]  *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembauer v. Cincinnati*, 473 U.S. 469, 483-84, 106 S. Ct. 1292, 1300-1301, 89 L. Ed. 2d 452 (1986) (plurality)) (other citation omitted).  A policymaker is an individual whose "'decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions.'" *Anthony v. City of N.Y.*, 339 F.3d 129, 139 (2d Cir. 2003) (quotation omitted).  An individual who merely has discretion to handle a particular situation is not a policymaker.  *See id.* at 139-40 (citation omitted).[7]

In addition, a court should not infer a "nebulous policy" from a single incident.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *see also Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 406-07 (1997) ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably."); *City of Canton*, 489 U.S. at 390-91 (stating that a single instance of inadequate training "says little about the training program or the legal basis for holding the city liable").  However, a single incident

---

[6] The framework of policy and custom also includes claims based upon inadequate training, *see City of Canton v. Harris*, 489 U.S. 378, 387 (1989), and inadequate screening in hiring, *see Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 415-16 (1997), neither of which Plaintiff asserts.

[7] In *Anthony*, a New York City Police Department sergeant who merely had the discretion to give orders in handling a particular situation involving the committal of a mentally ill woman did not have final authority for the purposes of municipal liability.  *See Anthony*, 339 F.3d at 139-40.

may become a policy if the municipality adopts it, so that it "represent[s] the conscious choices of the municipality itself . . . ." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004).

In this case, Plaintiff does not allege that a municipal policy or custom exists or that Defendants were carrying out such a policy or custom. Her only allegation involves an isolated incident, from which the Court cannot infer a "nebulous" policy or custom. *See Tuttle*, 471 U.S. at 823-24 (plurality); *see also Brown*, 520 U.S. at 406-07; *City of Canton*, 489 U.S. at 390-91. Moreover, a municipal policymaker did not execute or adopt the challenged acts. The highest ranking city officials involved in this case were Sergeants Masi and Servidone. Although they had discretion to arrest individuals in particular situations, it is not the case that their "edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694; *see Anthony*, 339 F.3d at 139-40. At most, they are "lower-level municipal employees to whom some authority has been delegated . . . ." *Amnesty Am.*, 361 F.3d at 126. Therefore, the Court finds that a municipal policy was not the "moving force" in this situation, and Plaintiff's claims against the City of Little Falls and the City of Little Falls Police Department are based solely on a theory of respondeat superior.

Accordingly, the Court **GRANTS** Defendants City of Little Falls' and City of Little Falls Police Department's motion for summary judgment on Plaintiff's § 1983 claims against them.

**B.    Plaintiff's false arrest/false imprisonment claim**

Claims for false arrest and false imprisonment are substantially the same under common law and in § 1983 actions. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations

omitted). Under New York law, the cause of action consists of the following elements: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of confinement; (3) the plaintiff did not consent to confinement; and (4) the confinement was not privileged. *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted). "A defendant is liable for false imprisonment even if he did not physically detain the plaintiff, if it can be shown that he 'affirmatively instigated or procured [the] arrest.'" *Savino v. City of N.Y.*, 168 F. Supp. 2d 172, 177 (S.D.N.Y. 2001) (quoting *King v. Crossland Savings Bank*, 111 F.3d 251, 256-57 (2d Cir. 1997)), *rev'd on other grounds*, 331 F.3d 63 (2d Cir. 2003).

Concerning the fourth element, the existence of probable cause is a complete defense. *See id.* (citation omitted); *Weyant*, 101 F.3d at 852 (citations omitted). Probable cause to arrest exists when the information available to the officers would warrant a person of reasonable caution to believe that the person arrested has committed or is committing a crime. *See Weyant*, 101 F.3d at 852 (citations omitted). On summary judgment, probable cause may be "determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . ." *Id.* (citations omitted).

In this case, Plaintiff does not allege that Defendant Lanphere was involved in the arrest. To the contrary, Plaintiff denies that Officer Lanphere radioed to anyone while they were engaged at the scene, called for backup, or advised Sergeant Masi of her conduct upon return to the station. According to Plaintiff, Officer Lanphere apologized to Mr. Papaleo regarding the day's events and signed the information and appearance ticket *after* Sgt. Masi ordered her arrest. These acts did nothing to instigate or procure Plaintiff's arrest or to prolong her detention. Moreover, Officer Lanphere was not involved in the physical detention of Plaintiff. Therefore,

the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's false arrest/false imprisonment claim against Officer Lanphere.

Plaintiff sufficiently alleges that the remaining two officers were affirmatively involved in her arrest – Sgt. Masi made the decision and issued the order to arrest, and Sgt. Servidone physically detained Plaintiff. Although these officers would possess a complete defense if probable cause existed to support Plaintiff's arrest, a dispute exists as to the events and knowledge of the officers. Defendants arrested Plaintiff for obstructing governmental administration in the second degree.[8] However, the reasonableness of their beliefs regarding probable cause for Plaintiff's arrest depends upon whether the Court credits Plaintiff's or Defendants' version of sharply disputed facts. On one hand, Plaintiff alleges that she merely made calm inquiries at the traffic stop before taking the remaining children to school and arriving at the station to wait for her grandson. She denies any interference or intimidation. On the other hand, Defendants contend that Plaintiff was disorderly and repeatedly interfered with a traffic stop prior to her arrest. Therefore, the Court **DENIES** Defendants' motion for summary judgment on Plaintiff's false arrest/false imprisonment claim against Sergeants Masi and Servidone.

C.    **Plaintiff's state-law battery claim**

Under New York law, "'[a] 'battery' is an intentional wrongful physical contact with

---

[8] Pursuant to N.Y. Penal Law § 195.05, "[a] person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . ." N.Y. Penal Law § 195.05 (McKinney 1999).

another person without consent.'" *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) (quotation and other citations omitted). In an unlawful arrest, any force may constitute a "technical battery," regardless of whether it was reasonably imposed in the context of the arrest.[9] *See Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 581-82 (S.D.N.Y. 2002) (citing *Johnson v. Suffolk County Police Dep't*, 245 A.D.2d 340, 665 N.Y.S.2d 440, 440 (2d Dep't 1997)) (other citation omitted). However, if the arrest was lawful, a "technical battery" could not occur merely by the routine use of handcuffs. *See Johnson v. Suffolk County Police Dep't*, 245 A.D.2d 340, 341 (2d Dep't 1997) (citation omitted).

Plaintiff alleges that Sgt. Servidone alone physically touched her when he handcuffed her. She does not, however, allege that Officer Lanphere or Sgt. Masi battered her. Therefore, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's battery claim against Officer Lanphere and Sgt. Masi.

With respect to Sergeant Servidone, there is a dispute regarding the existence of probable cause for Plaintiff's arrest. Therefore, the Court **DENIES** Defendants' motion for summary judgment on Plaintiff's battery claim against Sgt. Servidone.

**D.    Defendants' reliance upon the defense of qualified immunity**

Police officers sued in their individual capacity may rely upon the defense of qualified immunity under § 1983 when their conduct in performing discretionary functions does not violate "clearly established statutory or constitutional rights of which a reasonable person would

---

[9] Plaintiff does not claim that excessive force was used, which would have required the Court to focus on the objective reasonableness of the physical contact rather than the existence of probable cause. *See Papineau v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (citation omitted).

have known."[10] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations and footnote omitted). A person has a clearly established right to be free from arrest in the absence of probable cause. *See Cook v. Sheldon*, 41 F.3d 73, 78 (2d Cir. 1994) (citations omitted). If an officer undertakes an arrest without probable cause, qualified immunity still applies "if he can show either that: (1) it was objectively reasonable for him to believe he had probable cause; or (2) officers of reasonable competence could disagree whether probable cause existed." *Id.* (citation omitted). The officer's underlying motive for the arrest is irrelevant. *See id.* (citations omitted).

Summary judgment is appropriate on this issue if "'no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.'" *Doe v. Marsh*, 105 F.3d 106, 110 (2d Cir. 1997) (quotation omitted). However, qualified immunity cannot be determined as a matter of law when the reasonableness of the officers' beliefs depends on whether one believes the officers' version of disputed facts. *See Weyant*, 101 F.3d at 858.

As noted above, the reasonableness of the officers' beliefs regarding probable cause for Plaintiff's arrest depends upon whether the Court credits Plaintiff's or Defendants' version of sharply disputed facts.

Accordingly, the Court **DENIES** Defendants' motion for summary judgment on the basis of qualified immunity because disputed issues of fact exist regarding the reasonableness of Defendants' probable-cause determination.

---

[10] The Court notes that "New York law . . . grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis." *Papineau*, 465 F.3d at 63 (citations omitted). Since both Plaintiff's federal and state-law claims focus on the reasonableness of Defendants' actions, the same analysis of qualified immunity applies.

### E.     Plaintiff's state-law libel and/or slander claim

Plaintiff's libel/slander claim is based upon a report published in a local newspaper which stated that she had been arrested and charged with obstructing governmental administration in the second degree. However, Defendants argue that Plaintiff cannot maintain this claim because any statements Defendants made prior to the newspaper report were true.

To establish a prima facie case of slander or libel, the plaintiff must allege (1) a false and defamatory statement concerning the plaintiff, (2) the defendant's publication of the statement to a third party, (3) fault on the defendant's part, and (4) injury to the plaintiff. *See Kramer v. City of N.Y.*, No. 04 Civ. 106, 2004 WL 2429811, *8 (S.D.N.Y. Nov. 1, 2004) (citation omitted); N.Y. Jur. 2d *Defamation & Privacy* § 4.

The plaintiff "'has the burden of showing the falsity of'" the challenged statement. *Prozeralik v. Capital Cities Commc'ns, Inc.*, 82 N.Y.2d 466, 473 (1993) (quotation omitted). In addition, the defendant can assert the truthfulness of the alleged defamatory statement as a complete defense. *See Han v. State*, 186 A.D.2d 536, 537 (2d Dep't 1992) (citations omitted). To qualify for the defense, the defendant must merely establish the substantial truthfulness of the statement. *See id.* (citing *Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 383, *cert denied* 434 U.S. 969).

In this case, Plaintiff does not claim that Defendants made false statements to the newspaper or that the newspaper report about her arrest was false. To the contrary, Plaintiff admits that she was arrested and charged as reported in the newspaper. Therefore, the Court finds that there is no dispute that the allegedly defamatory statements were true.

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on

Plaintiff's libel/slander claim.

**F.     Plaintiff's deprivation of liberty claims under the Fifth and Fourteenth Amendments**

Plaintiff's final cause of action is not well-defined. Plaintiff alleges that "Defendants acted under color of law by placing plaintiff under arrest, confining her and restraining her liberty." *See* Complaint at ¶ 41. Moreover, Plaintiff contends that "Defendants abridged the rights guaranteed to plaintiff under the Fifth and Fourteenth Amendments of the United States Constitution." *See id.* at ¶ 42. In their response papers, Defendants treat this cause of action as asserting a general deprivation of constitutional rights under 42 U.S.C. § 1983.[11]

As a threshold matter, the Court must determine the source for the alleged constitutional rights that were violated. It is well-established that the Fifth Amendment regulates federal conduct and not the acts of state or local officials. *See Snow v. Vill. of Chatham*, 84 F. Supp. 2d 322, 326 (N.D.N.Y. 2000) (quoting *Brock v. North Carolina*, 344 U.S. 424, 426, 73 S. Ct. 349, 97 L. Ed. 456 (1953)). Therefore, Plaintiff cannot assert a Fifth Amendment claim against the local police defendants.

In addition, the Court notes that Plaintiff does not allege unequal treatment, compare her treatment to the treatment of others, or mention equal protection or discrimination. Moreover, Plaintiff has alleged no facts that would support such a Fourteenth Amendment theory.

Finally, the Court concludes that Plaintiff cannot proceed on a generalized substantive due process theory because a specific constitutional provision – the Fourth Amendment –

---

[11] The parties do not provide any substantive argument regarding this cause of action.

provides an explicit source of constitutional protection for her injuries relating to the claimed false arrest. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S., at 395, 109 S. Ct., at 1871 (footnote omitted)); *Snow*, 84 F. Supp. 2d at 327 (citation omitted).

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's deprivation-of-liberty claim.

### G.     Notice to Counsel

As this litigation progresses, the Court reminds counsel of their responsibility as officers of the court pursuant to the Federal Rules of Civil Procedure and the New York Code of Professional Responsibility to avoid advancing frivolous or unsupported claims and arguments. Counsel would be well-advised to review these obligations and to examine the allegations and factual contentions for evidentiary support before proceeding further with this action.

### IV. CONCLUSION

Accordingly, after reviewing the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment on Plaintiff's claims against Defendants City of Little Falls and City of Little Falls Police Department is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment on Plaintiff's false arrest/false imprisonment claim against Officer Lanphere is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment on Plaintiff's false arrest/false imprisonment claim against Sergeants Masi and Servidone is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment on Plaintiff's battery claim against Officer Lanphere and Sgt. Masi is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment on Plaintiff's battery claim against Sgt. Servidone is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment on the basis of the officers' defense of qualified immunity is **DENIED** because disputed issues of fact exist regarding their probable cause determination; and the Court further

**ORDERS** that Defendants' motion for summary judgment on Plaintiff's libel/slander claim is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment on Plaintiff's Fifth and Fourteenth Amendment claim is **GRANTED**;[12] and the Court further

**ORDERS** that Plaintiff's counsel is to initiate a telephone conference, using a professional conferencing service, with the Court and opposing counsel on February 6, 2007 at 9:30am to set a date for the trial of this action.

**IT IS SO ORDERED.**

January 18, 2007
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[12] The remaining claims in this action are (1) false arrest/false imprisonment against Sergeants Masi and Servidone and (2) battery against Sgt. Servidone.

-14-